## IDORA AMUSEMENT CO v DANKOVICH

Ohio Appeals, 7th Dist, Mahoning Co

No 2178. Decided April 8, 1936

David Haynes, Youngstown, for plaintiff in error.

Ruffalo & Wall, Youngstown, for defendant in error.

## OPINION

By ROBERTS, J.

It may be understood, generally speaking, that the plaintiff seeks in this action to recover for injuries which she claims to have received by reason of her having, without fault, stepped or fallen into the orchestra pit, so-called, when attempting to cross the theater; that a so-called orchestra pit had been excavated and permitted to continue to exist in front of the stage and between the stage and the seats provided for the audience, which pit was about two feet lower than the surrounding surface of the floor; that she did not know of the existence of this pit, and that by reason of the theater being unlighted, or so dimly lighted, she was unable to and did not observe the pit until she stepped or fell into it, and she claims that there was actionable negligence on the part of the defendant in allowing the excavation to so exist in a darkened condition, when the building was thrown open to the public to attend a baby contest which was about to commence.

The accident happened about one o'clock P. M. Precisely what the defense was in this case is somewhat difficult to determine. It is first denied that the plaintiff paid any admission to enter the theater. Probably it is not important whether she did or did not pay admission. There is no doubt but that under the terms she was entitled to

enter the theater. The amended answer then denies each and all of the allegations of the amended petition, and finally alleges that the theater was at all times kept in good repair and that a proper degree of care was exercised toward the patrons of the park.

A considerable part of the brief of the defendant, the plaintiff in error, is devoted to a consideration of the evidence in the case, evidently for the purpose of showing that there was no negligence in the condition of this orchestra pit or the manner in which it was maintained; that the building was sufficiently and properly lighted and that the plaintiff was herself guilty of negligence. Commencing on page 16 of the brief it is said:

"Here we have the official of the independent contractor or lessee in charge of the theater this day, who in his opinion found that it was not necessary to put any more lights on and that he was willing and did furnish this theater to the members of his organization in what he thought to be a safe condition and a condition over which, of course, The Idora Amusement Company had no control at the time, and we believe based upon proper authorities should have been relieved of responsibility and a verdict directed for it at the conclusion of all of the evidence."

Then follows a citation of numerous authorities, with quotations therefrom, presumably for the purpose of establishing the proposition that the defendant company had leased or transferred, in some unexplainable way, this park, including the theater, for the purpose of providing amusement and entertainment for an Hungarian society or organization, and that this Hungarian organization at the time in question was in charge of the theater and not the Idora Park Amusement Company, and that the Hungarian association was responsible for any liability that might have been incurred by reason of the injuries of the plaintiff, and that the Idora Park Amusement Company was not responsible therefor.

This court would have been aided considerably in acquiring a knowledge of the plans and condition of this theater had a plat or plan thereof been made an exhibit in the case. This was not done and we have only the testimony of six witnesses for the defendant, evidently all Hungarians and with limited knowledge of English. We apprehend that the situation was probably this, as we have best been able to understand it—the orchestra extended along one end or the front of the building. Between each end of the orchestra and the walls of the building there was a passage way for the public to proceed along the ends of the stage and the ends of the orchestra pit to where the seats were placed, for the convenience of patrons, commencing at the floor and gradually extending upwards toward the rear.

It seems to be quite evident that there was a railing, some two or three feet high, extending around the pit, but in which on either side there was a door or gate which at the time of the accident were open. This pit was some two feet deep. It was for the use of the orchestra, and so located that the view of the stage would not be interfered with by the orchestra in front. There was a further depression in the middle of this excavation for the use of the musicians, whereby they might pass to the rear under the stage.

The plaintiff and her husband, about one o'clock, after spending some time in other things of interest, went to the theater for the purpose of attending a baby show, which was to take place at this time, and also to find a little granddaughter who was understood to be somewhere in the building as a part of the audience. The plaintiff was following immediately in the rear of her husband. When they reached a point about opposite the end of the orchestra pit, they observed a considerable number of people congregated upon the other side of the theater, and as a matter of convenience, rather than to pass on along the wall to the rear and back of the seats and come up the other side, they proceeded across in front of the seats. There was space for pedestrians or patrons to do so between the front row of seats and the railing. Not observing the railing, plaintiff and her husband did not go far enough in the rear, but started across and went through the open gate and fell into the excavation, not having observed it, whereby the plaintiff was considerably injured. As to whether or not there was actionable negligence in the condition of the theater, by reason of the existence of this orchestra pit, the place where it was located, the absence of sufficient guard rails or safeguards and absence or deficiency of lights or of warning and protection on the part of the defendant, or some one in its behalf, the evidence does not make disclosure as fully as could be desired. As before stated, knowledge as to the plan of the theater is not as complete as might be desired.

It is not claimed that there was anyone stationed in this part of the theater for the purpose of directing or cautioning anyone entering the theater at this door for the purpose of attending the festivities about to take place. So far as recalled, there is no evidence of electric or other artificial lights. Whether the walls of this summer resort theater were of wood or in part of curtains, we do not know. It seems to be indicated that on the opposite side from where the plaintiff attempted to enter there was more light, by reason of the fact that doors, windows or curtains were to some extent open.

It is not contradicted but that this was a bright, clear day, the sun shining brightly, and the statement of witnesses is, therefore, presumably true that for some little span of time after entering, coming from the bright sunshine, that a person would not be able to see as distinctly as some period a little later when eyes could become accustomed to a dimmer light. There is some conflict in the testimony regarding the extent to which a person could see, but this court is of the opinion that there is sufficient testimony in this case indicating there was but little light in this building where the accident occurred, and that a person might, in the exercise of reasonable care, fail to notice this railing or this excavation in attempting to cross the theater where one might reasonably suppose that such crossing was permissible.

Some criticism of plaintiff's witnesses is indulged in by counsel for the defendant as being unfair or misrepresenting the facts. As before stated, the knowledge of the witnesses of English was evidently not very extensive. This court is not able to say that they were misrepresenting, intentionally or otherwise. The evidence presents a situation properly submitted by the trial court to the jury. A different degree of evidence is necessary to reverse a case, as is prayed for by the defendant, than is required in the submission of a case to the jury upon the preponderance of the evidence. This court can not reverse unless it can say that the verdict is against the manifest weight of the evidence, and this it can not do.

There is evidently another proposition in this case, not alleged in the amended answer but appearing in brief, as hereinbefore stated, which seems to be based upon the proposition that on the day in question the defendant had leased or turned over to this Hungarian association this park and the theater, and probably whatever other places of amusement there may have

been there under the control of the defendant. There is no evidence of any contract or lease having been entered into between the Hungarian association and the defendant; whether they paid anything for the privilege of visiting this resort on that day, we do not know. There is evidence that the Hungarians who attended paid twenty-five cents each for a button. What was to be done with the money thus taken in is a matter undisclosed in this case. The authorities cited are generally upon the proposition of the owner of an amusement park not being responsible for an accident which occurs by reason of the negligence of a concessionier, and this for the reason that such specific concession is under the control of the owner and proprietor thereof, and over which the owners of the park have no authority. It is a generally recognized principle that where a landlord or owner leases premises as a whole to a tenant for a term, without reserving any part thereof, or right of entrance, that the landlord is not liable to respond in damages for the negligence of the tenant. This rule does not prevail, however, when the landlord reserves for his own use, or the use of another third party, certain parts of the premises with right of access to and through them. **Agricultural Society v Brenner, 122 Oh St, 568.**

This is not the situation in the instant case. It is not claimed, nor does the evidence show, that this theater or any other part of the park was specifically leased to the Hungarian society on the afternoon in question. The evidence goes no further than to indicate it was a day set apart by these people for the patriotic celebration, that they were permitted to so meet at the park; whether for compensation or not to the plaintiff association, we are not advised.

Counsel on both sides of this case express approval of the case of **Charles Hosac, by Next Friend, Plaintiff in Error v The Idora Park Amusement Company, (9 Abs 654) Defendant in Error,** as decided by this court Oct. 3, 1930, the opinion in that case being by the writer of the instant opinion. In the Hosac case it was held that The Idora Park Amusement Company was not liable. The facts were that some concessionier had and was operating within the park something in the way of a merry-go-round; that it was elevated several feet from the ground; that a platform was provided extending from the ground at one end upward and to a level with the merry-go-round. A large number of children were present desiring to ride on this construc-

tion; that as they passed upon this platform they were crowded and hurried along by an attendant and employe of the concessionier, and as a result of such crowding the Hosac boy was forced off from the platform and received injuries for which he sought a recovery. In this case the concessionier had been granted a right to operate his amusement device in the park. There was nothing defective in it, no negligence in its operation, except that an employe, as stated, crowded the children along too fast, with the result that the boy fell off. The conclusion was reached in that case that whatever rights, if any, the boy might have against the concessionier, that he had no rights as against the park company, the right to so operate having been given the concessionier, who, and not the park company, was responsible for such accident. This was in conformity with the rule hereinbefore suggested with relation to the rights and liabilities of landlords and tenants. This concession was under the full control of its owner. The park company had assumed no responsibility therefor. In the instant case, however, a different situation was presented. The theater, the alleged defective condition of which caused the injuries to the plaintiff, was owned by the defendant, controlled and operated by the defendant. There is nothing in the case tending to indicate, nor making it probable to presume that it was believed, either by the park company or by the Hungarians, that the latter were taking possession of this theater and that a duty devolved upon them to station people along the aisle and around the orchestra pit and see to it that the building was properly and sufficiently lighted. These things, to the extent that they were duties, still devolved upon the Idora Park Amusement Company.

Counsel for defendant cite in brief McCain v Majestic Building Co., 120 La., 308; 45 So., 258; Caldwell v Slade, 156 Mass.; 84 NE, 87. The citation should have been 30 NE, 87. Denver Park Amusement Co. v Pflug, 2 Fed. N.S., 960, with quotation, page 963. The case commences, however, at page 961; Sullivan v New York Telephone Co., 142 N. Y. Supp., 738. The citation should have been 735.

These cases are not in point, for the reason that they involve conditions where the property and control thereof was under lease to a tenant, thereby relieving the owner from liability. Perhaps in some of them there was some deviation as to conditions. This, however, was the general trend of these authorities.

Counsel for defendant cites 62 C. J., 872. On this page we find the following:

"In view of the well settled principle that it is the duty of the proprietor of a place of public amusement to use ordinary and reasonable care to put and keep the premises, appliances and amusement devices in a reasonably safe condition for persons attending, it is very generally held, although not universally, that he is liable for such injuries sustained by a person in attendance, although the injury is caused by the negligent act or omission of an independent contractor, lessee or concessioner."

Many authorities are cited with the above quotation.

In 61 A.L.R., commencing on page 1289, is an extended citation of authorities upon the subject of amusements—injuries to patrons, in which many authorities are discussed and considered. This subject is also considered, with many authorities, in the 22 A.L.R., page 610. Specifically considering who is liable for injuries, the citations commence on page 619.

In the case of Hosac v Idora Park Amusement Company, hereinbefore mentioned, which is also reported in 9 Abs 654, with which counsel on each side are familiar, a considerable number of authorities may be found; although not mentioned in this case, it might be interesting to query what would have been the effect of §12600-35 GC, providing for the lighting of theaters, had that section been quoted in this case.

An opinion is found in the bill of exceptions by the trial judge, in which other authorities are cited.

The conclusion is reached from the evidence and the authorities considered that no prejudicial error occurred in the trial in the Court of Common Pleas, and the judgment of that court is affirmed.

Judgment affirmed.

CARTER and NICHOLS, JJ, concur.